## Uber's Estate

Before Van Dusen, P. J., and Stearne, Sinkler, Klein, and Bok, JJ.

*George V. Strong*, for exceptants.

*Isaac S. Grossman*, contra.

*William Carson Bodine* and *Thomas Stokes*, of *Pepper, Bodine, Stokes & Schoch*, amici curiae.

VAN DUSEN, P. J., April 2, 1937.—The will devised some real estate and made some money gifts and then provided:

"Any and all taxes that may be due and payable upon the devise of the real estate, legacies and bequests shall be paid out of and from the principal of my residuary estate."

The residue is then given one half to his brother, and the other half in trust to his daughter, for life, with remainder for such purposes as the daughter may appoint by will, and, if there be no appointment, then to such persons as may be entitled to the same under the intestate laws.

### State inheritance tax

The auditing judge held that this "tax free" clause required that inheritance tax on the residue should be paid out of the residue as a whole. The exceptions claim that each part of the residue should pay its own tax.

Half of the residue in this case pays tax at 10 percent. The other half pays tax at 2 percent on the life estate, and at a rate now unknown on the principal, for the appointees or the persons entitled in default of appointment may be descendants of the testator, or they may be collaterals.

If the second half eventually pays only 2 percent, then charging the 2 percent and 10 percent taxes upon the residue as a whole will result in the second half paying more tax, and the first half paying less tax, than would normally be the case.

The only tax now due which can properly be paid on the second half is the 2 percent tax on the life estate:

Constable's Estate, 299 Pa. 509. When the remainder comes into existence it must pay a full 2 percent or 10 percent. The amount of the whole tax cannot be determined until that time. It may amount to 10 percent on the one half plus 10 percent on the other half plus 2 percent on the life estate.

The first half of the residue now goes out; and, if the inheritance tax is to be paid by the whole residue, then, after paying the tax now due, it will be necessary to reserve a fund to pay the balance of possible maximum tax with a generous additional allowance for possible losses on investment, and possible increase in the value of principal at the time the tax becomes payable. There is no authority in the will to set up any such fund, and the court would have to set up a new trust.

It appears to be impractical and almost impossible to pay the whole tax out of the residue as a whole. No doubt testator could so direct, but it would require much clearer language than that which we have in the present case.

Our conclusion accords with that arrived at in Marvin's Estate, 26 D. & C. 527, 533. In that case tax had been paid on the whole at two percent. Trusts of two ninths had terminated and been distributed, apparently without any claim having been made that these shares should help pay the tax on the other shares. The trusts of six ninths still continued. The trust of one ninth had terminated, and an appointment had been made to a collateral. Judge Holland therefore found himself in the midst of the practical difficulties of which we have spoken. Should a fund be retained out of the seven ninths sufficient to pay 10 percent tax on the whole? He said:

"The principal of the residue is the end of the line, and it is an impossibility to pay over any of it free of tax. No matter how little tax is paid or the rate at which paid, the residue, and consequently the legacies paid thereout, will be diminished. At this point a general testamentary provision that all taxes be paid out of residue becomes meaningless. . . .

"Aside from the question of construction of the will, there is the further objection of withholding part of each share of the principal, as it becomes distributable absolutely, pending determination of the future liability of that share for its proportionate part of the tax due on other shares. The uncertainty, not only whether the rate will be two or ten percent, but what the value of the principal will be when the tax becomes due, makes the fixing of the amount to be reserved very difficult, and the best present estimate may turn out to have been inadequate or excessive."

See also Bostwick's Estate, 16 Wash. Co. 26.

If the residue was given outright, then the difficulties with regard to retaining a fund which exist in this case would disappear. But still we think that it would take much clearer language than that which we have in this case to throw upon the residue as a whole the taxes at unequal rates upon the two halves. As said in the above case:

"The principal of the residue is the end of the line, and it is an impossibility to pay over any of it free of tax."

See Roberts' Estate, 2 D. & C. 541.

The tax-free clause in this will occurs before the residuary clause and it refers to "the devise of the real estate, legacies and bequests." This is a reference to what has gone before and is very far from a clear and unequivocal direction to pay the tax on the halves of the residue out of the residuary as a whole.

The first, second, third and fourth exceptions of Maebelle Uber Farrell (formerly Nazel) and of Provident Trust Company of Philadelphia, substituted trustee, are sustained.

### Federal estate tax

Pursuant to an antenuptial agreement testator had made a deed of trust before he made his will, in which he gave $25,000 in trust to pay the income to his intended wife for her life, and if she died during his lifetime then

to pay the principal to him, and if she outlived him then to pay the principal to her. She did outlive him, and she has now become entitled to the whole fund. The executor included this fund in his return of Federal estate tax and paid tax on it.

The auditing judge was asked in a general way to declare that the Federal estate tax should be apportioned between the trust fund and the testamentary fund. He declined to do so, following Ely's Estate, 28 D. & C. 663, Bok, J.; Farmers' Loan & Trust Co., etc., v. Winthrop, Exec., 238 N. Y. 488; Bemis et al. v. Converse et al., 246 Mass. 131; and differing with Powell's Estate, no. 1010 of 1934, Gest, J.; Roberts' Estate, no. 526 April term, 1917, Stearne, J.; and Fuller, Exec., v. Gale, 78 N. H. 544.

Ordinarily this question could not be answered at the audit of the executor's account. The act of Congress makes the executor primarily responsible for the Federal estate tax: U. S. Revenue Act of February 26, 1926, 44 Stat. at L. 9, sec. 305($a$), as amended by the Act of August 30, 1935, 49 Stat. at L. 1014. If he has a right, or if the residuary legatees have a right, to reimbursement from other persons, such as the trustee or beneficiaries under a deed of trust, that right must be pursued in a forum which can enforce a judgment against the indemnitors. That is to say, it must be presented normally at the audit of the account of the trustees under the deed of trust. These trustees and the beneficiaries under the deed are not ordinarily parties to the audit of the executor's account, and our decision would not be binding upon them.

Immediately after testator's death the trustee under the deed of trust turned over everything held in the trust to the widow, Rae S. Uber. Mrs. Uber was not mentioned in the will, but she has become assignee of the half of the estate which testator in his will gave to his brother. It is therefore physically possible to enforce a contribution by her to the Federal estate tax by charging it to her share in distribution. It is said at 57 C. J. 491 that when the as-

signee of a claim sues a debtor the debtor may set off a claim which he has against the assignee. That is this case in substance, and while the authorities cited in support of the text are not very instructive, we see on reflection no objection to the practice. Procedure is only a means to an end; but we still stress the point that but for these unusual circumstances the question could not be raised here.

We must therefore consider the merits, and we think that the auditing judge was right in his conclusion.

It is settled that the Federal tax is not to be apportioned among the specific and money legacies but is to be borne by the residue: Newton's Estate, 74 Pa. Superior Ct. 361; Matter of Hamlin et al., 226 N. Y. 407; Plunkett et al. v. Old Colony Trust Co., Trustee, et al., 233 Mass. 471. Gifts made in contemplation of death are in the same position: Central Trust Co. v. Burrow, 144 Kan. 79, 58 P. (2d) 469. As the Federal tax is graduated according to the size of the estate, a legacy of $1,000 from a large estate will, if there is an apportionment, pay more tax than a legacy of the same amount from a small estate. This objection ought to prevent any change in the law by statute such as has been made in New York, which would require specific and money legacies to bear. any part of this graduated tax. The New York statute exempts life estates: Laws of 1930, ch. 709; but not money legacies. If the trust estate is to pay any part of the tax, so much of it as is given in the likeness of money legacies would seem to stand in the same position. Possibly the whole trust estate should be likened to a specific legacy, for it consists of specific items, and is not testator's general residuum.

On the other hand, as the Federal tax is laid on the trust estate and the testamentary estate taken as a whole, and the deed of trust is for tax purposes treated as testamentary, it might be that if there is in the trust estate something comparable to a residue in a will such residue should bear a share of the tax. The problem is a specific

one, and must be worked out in a proceeding to which everyone who may be called upon to bear a share of the tax is a party. It cannot be solved by a general declaration. The point which we have suggested we will deal with when we meet it; it is not in this deed of trust.

The deed of trust in this case has operated entirely in favor of one person, the widow. It contains no residuary clause. It was the settlement of a specific sum on condition, but made in consideration of marriage. A widow is a preferred legatee. If she got a legacy of $25,000 it would not bear any part of the Federal tax, and its position is no different because given by deed of trust.

The fifth and sixth exceptions of Maebelle Uber Farrell and the fifth, sixth, and seventh exceptions of Provident Trust Company of Philadelphia, substituted trustee, are dismissed.